J. B. McLaughlin v. E. Y. Royce, Appellant, and O. M. Barrett.

Deeds: RIGHT TO REPURCHASE. A deed reserved to the grantor the right to repurchase at a certain price within two years. A witness who heard the negotiations testified that it was agreed that if the grantor desired to take the land off the grantee's hands, at a certain price, within two years, the latter would redeem it to him. The grantor testified that he reserved the right to repurchase by paying the sum named in the deed, "which was only given for securing the same as a mortgage." The grantee testified that he was to deed the land back within two years "if he still owned it." *Held*, that the evidence did not sustain the grantor's contention that the deed was a mortgage. Besides, as the arrangement to reconvey created nothing but an option to repurchase, the grantor made no debt for a mortgage to secure.

DEMAND. Where a deed provided that the grantor might repurchase of the "grantee or his assigns" within a certain time, a demand and tender by the grantor to the grantee, with knowledge of the sale of the land by the latter to a third person, are not sufficient; they should be made to the assignee.

TENDER. A grantor was entitled to a reconveyance on payment of
$1,500, but, before tender, the land was sold to third person, who
assumed a mortgage of $600. *Held*, that the latter was not obliged
to accept a tender of $1,000.

**Breach of Covenant:** ASSUMING MORTGAGE. Where the seller of land
covenants against encumbrances, the covenant is breached and
damage shown if a mortgage exists even though the buyer sells
again and the last grantee assumes such mortgage.

*Appeal from O'Brien District Court.*—HON. SCOTT M. LADD,
Judge.

TUESDAY, MAY 9, 1899.

ACTION in equity to quiet the title in the plaintiff to
certain land described, as against the defendant E. Y. Royce.
upon hearing on the issues joined, judgment and decree
were rendered against the defendant E. Y. Royce, from
which he appeals.—*Affirmed.*

*Boies & Roth* for appellant

*E. C. Herrick* for appellees.

GIVEN, J.—I.  Appellant being the owner of the land
in question, did, on the seventeenth day of July, 1888, in
pursuance of an agreement for an exchange of properties,
convey the same to defendant O. M. Barrett by deed con-
taining the usual covenants that the land was free of all
incumbrances, and for the recited consideration of one thou-
sand five hundred dollars.  This deed, after describing the
land, contains the following:  "Sold subject to the lease
of 1888, which inures to grantor, except that the grantor or
his heirs or assigns, has the right at any time within two
years, by the payment of fifteen hundred dollars cash, or one-
fourth cash and balance in five equal payments, at eight per
cent., to repurchase this tract of land of the grantee, or his
heirs or assigns."  Defendant Barrett conveyed the lots in
Sheldon given in exchange for this land, to the appellant, and
he took possession thereof.  On the twenty-fourth day of

November, 1888, Barrett conveyed the land to the plaintiff for the consideration of one thousand dollars, subject to a mortgage of six hundred dollars that plaintiff assumed, which mortgage had been put upon the land by appellant when he owned it. Plaintiff went into possession of the land, made lasting and valuable improvements thereon, paid taxes and interest on said mortgage debt. Appellant alleges and contends that, at the time he executed said deed to Barrett, it was orally agreed, in addition to what is recited therein, that said deed "should be and operate as a mortgage upon said premises for the security of the payment of said sum of money." He further alleges that on the fifteenth, and again on the sixteenth, day of July, 1890, he tendered one thousand five hundred dollars in money to O. M. Barrett, and demanded a reconveyance of said land, which he refused to make. He prays that said deed be decreed to be a mortgage, that it be foreclosed, and that he have a reasonable time in which to redeem therefrom, or, if said deed is not decreed to be a mortgage, that a decree be entered that, upon payment of one thousand five hundred dollars into court, said land be reconveyed to him. Appellees deny that it was agreed that said deed should operate as a mortgage, deny that appellant tendered one thousand five hundred dollars, as alleged, and deny that he is entitled to a reconveyance upon the payment of one thousand five hundred dollars; and herein we have the first issues to be considered.

II. As to the alleged oral agreement, it appears that, after negotiating for several days, it was agreed that Barrett would convey to Royce certain lots in Sheldon, in consideration of which Royce would deliver to Barrett certain personal property, and a conveyance of the land in question free of incumbrances. The personal property was delivered, and the conveyance made, as already stated. S. A. Calvert, who heard the negotiations, says: "It was agreed that, at any time within the next two years, if Royce desired to take the land off Barrett's hands at one thousand five hundred dollars,

he (Barrett) would re-deed the land to him (Royce), and thereupon the trade was consummated." Royce testifies: "I decidedly reserved the right of repurchasing by paying Mr. Barrett one thousand five hundred dollars,—agreed to the conditions named in the deed, which was only given for securing the same as a mortgage." Barrett testifies: "Mr. Royce and I were trying to make a trade. He said he wouldn't take my Sheldon lots unless he could trade me land for them. I asked him two thousand dollars for the lots. He offered to take the lots at two thousand dollars, if I would take the land in question at one thousand six hundred dollars. I offered one thousand five hundred dollars for the land. I finally told him that I would not take the land at one thousand six hundred dollars, but I would take it at one thousand five hundred dollars, and that, if I still owned the land, that I would sell it back to him any time within two years; and he finally said that he would do that, and that he would accept the offer." These witnesses do not materially differ as to what the agreement was, except that Barrett says he was to sell it back "if I still owned the land;" but he does not plead such a condition, nor does the preponderance of the evidence sustain it. From the recital in the deed quoted above, and this evidence, it is clear that Mr. Royce had an option to repurchase the land within the time and on the terms specified in the deed. Such an agreement did not create any indebtedness from Royce to Barrett to be secured. No indebtedness could arise until Royce exercised his choice to repurchase. There is no evidence to sustain the claim that it was agreed that the deed was to operate as a mortgage, and the terms of agreement preclude such an understanding.

III. The agreement, as recited in the deed, was that Royce, or his heirs or assigns, had the right, at any time within two years, by the payment of one thousand five hundred dollars cash, or one-fourth cash and the balance in five equal payments at eight per cent., "to repurchase this tract of

land of the grantee or his heirs or assigns." There was no obligation on the part of Royce, his heirs or assigns, to take the land. It was a mere option, that could not be enforced. Mr. Royce alleges, as showing an election on his part to take the land, that, in compliance with the agreement, he within two years tendered one thousand five hundred dollars in cash to Barrett, and demanded a reconveyance of the land. Appellant knew at and long before the date of the alleged tender that Barrett had conveyed the land to plaintiff. That deed was filed for record November 24, 1888. The agreement was that Mr. Royce, his heirs or assigns, might purchase "of the grantee, his heirs or assigns." Barrett having conveyed the land to the plaintiff, the right to repurchase was from him, not from Barrett. There was nothing in the contract to prevent Barrett from conveying to another, subject to the option. The deed expressly provides for that, in giving appellant the option to repurchase from Mr. Barrett, "or his heirs or assigns." Appellant does not allege that he ever made any tender of money to the plaintiff, and demanded of him a conveyance of the land. Though not alleged, evidence seems to have been fully taken on that subject, and also as to the alleged tender to Barrett, Mr. Royce says: "I went with my son, F. B. Royce, to Barrett, with one thousand five hundred dollars; and he tendered the money to Mr. Barrett, and made a written demand, and retained a copy of the written demand, demanding a deed of Mr. Barrett. Mr. Barrett said he was powerless, as far as making a deed was concerned, and said, 'See Mr. McLaughlin about that.' I asked Mr. Barrett how much I should pay Mr. McLaughlin; and he said if Mr. McLaughlin had not paid the mortgage, he would be entitled to one thousand dollars." Mr. F. B. Royce identifies a written notice, dated July 15, 1890, from appellant to Barrett, demanding a reconveyance of the land on compliance therewith, and offering therewith to pay one thousand five hundred dollars in cash, or on the terms named in the deed, if preferred. He says that on the day of its date

he read said notice to Mr. Barrett, and that: "In making the tender, I informed him that I had one thousand five hundred dollars, to pay him, with me, and said Barrett refused to execute a deed of the same; and on the 16th day of July, 1890, I took a warranty deed to him, and requested him to execute the same, and told him I had the money; and he still refused to execute a deed, and said that McLaughlin was the one to make deeds." While Mr. Royce had the money, and displayed it, it was not counted, because Barrett refused to receive it and make a deed, but properly referred Mr. Royce and his son to the plaintiff. If it might be said that this was sufficient tender in form, it was not made to the proper person. The land having been conveyed to plaintiff, and appellant knowing that fact, the tender should, under the terms of the deed, have been made to the plaintiff. The two years dated from July 17, 1888, and there is no evidence of any offer to the plaintiff until the eighteenth day of July, 1890. F. B. Royce testifies that on that day he tendered plaintiff one thousand dollars, and that his father demanded a quitclaim deed, and that plaintiff said he wanted the land, and had a bond to secure him on his deed from Barrett. Plaintiff testifies: "Royce came to me and said that he had a thousand dollars to pay me for the place. I told him I wouldn't take it. This was all on the eighteenth day of July, 1890. A few days after, he met me, and we talked again about the thousand dollar offer; and I offered then to take the thousand dollars, and he then said he would have to see Barrett. This was in the presence of Frank Frisbee. After he said he would see Barrett, he turned from us and went away, and never afterwards mentioned the matter to me." There is no evidence that a tender of any other sum than one thousand dollars was ever made to the plaintiff, and it is evident that appellant was not willing to pay that sum without seeing Barrett. In view of plaintiff's liability assumed in his deed, to pay the mortgage on the land, he was certainly not obliged to accept a tender of one thousand

dollars, even if it had been made in time. The cross bill of appellant was properly dismissed.

IV. The defendant Barrett, by cross bill, asks to recover damages against appellant, Royce, for a breach of the covenants in his deed against incumbrances, because of his failure to pay said six hundred dollar mortgage. Judgment was rendered in favor of Barrett against Royce for eight hundred and twenty-six dollars, with six per cent. interest from date of judgment. The covenant in the deed from Royce to Barrett is that the land was "free and clear of all liens and incumbrances whatsoever," while the fact is that it was incumbered by said six hundred dollar mortgage which Royce had placed upon it, and which he has failed to pay. Plaintiff assumed said mortgage as part of the consideration to Barrett for his deed. The covenant, the breach, and the damage appear beyond dispute. The judgment and decree of the district court are correct, and they are AFFIRMED.

LADD, J., took no part.